IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROY COLLINS,

                Plaintiff,                OPINION AND ORDER

   v.

                                                     13-cv-762-wmc

MICHAEL MEISNER, and ERIN BERGLAND,

                Defendants.

---

In this civil action, plaintiff Roy Collins, an inmate at Columbia Correctional Institution ("CCI"), alleges defendants, employees of the Wisconsin Department of Corrections ("DOC"), violated his First Amendment rights in refusing to send outgoing mail. Before the court is defendants' motion to dismiss, in which they assert several bases for dismissal. (Dkt. #9.) For the reasons that follow, the court will deny defendants' motion in its entirety.

ALLEGATIONS OF FACT[1]

On January 30, 2012, Collins placed an outgoing First Class letter in the institution's mailbox, to be mailed to a female friend incarcerated in a different state. Collins contends that in the letter, he "shared some of his previous personal sexual experiences." (Compl. (dkt. #1-2) ¶ 25.) Consistent with DOC policy governing inmate-to-inmate mail, Collins left the letter open for staff review of its contents.

---

[1] The court accepts as true all well-pled factual allegations in the complaint, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), and views them in the light most favorable to the non-movant, *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

Defendant Erin Bergland determined that Collins' letter constituted "written pornography" in violation of DOC rules and refused to mail it out. (*Id.* at ¶ 26.) Collins contends that the letter neither described sexual behavior in a patently offensive way, nor did it lack educational value. "The sexual content of the letter was no more graphic than the sex scenes permitted in an R-rated movie." (*Id.* at ¶ 28.) Allegedly, contrary to DOC policy requiring staff to submit a notice of non-delivery of mail, Bergland left the letter wedged between the crack of his cell door with a post-it-note explaining that the letter was not permitted. In materials submitted with this complaint, Collins represents that he does "not have the letter anymore because I was upset about . . . Bergland not sending" out the mail. (Record from Circuit Court, Ex. 3 (dkt. #3-3).)

On or about February 22, 2012, Collins attempted to mail another outgoing First Class letter to a female friend incarcerated in Louisiana. In this letter, "Collins wrote a short fiction love-story/romantic fantasy (which the female friend requested)." (*Id.* at ¶ 32.) On February 23, 2012, Collins found this letter left wedged in a crack of his cell door with a warning slip and post-it note from Bergland indicating that the content of the letter constituted written pornography in violation of DOC rules.[2] Again, in doing so, Collins alleges that Bergland failed to complete a notice of non-delivery of mail as required by DOC regulations.

---

[2] Collins explains that a "warning slip" is a "written warning to the inmate that future alleged misconduct will result in severe disciplinary action," and that these slips "are kept on record and are utilized by staff to evaluate an inmate's overall conduct." (Compl. (dkt. #1-2) ¶ 34.)

2

A Unit Manager read the second letter and determined that Bergland erred in refusing to mail it.  Although Collins does not allege it expressly, this letter was apparently then mailed.  Even so, Collins claims that then-Warden of CCI Michael Meisner "<u>still</u> approved, authorized and permitted" Bergland's conduct, and that Bergland "<u>still</u> continues to assert that it is a violation of DOC rules for inmates to include any kind of sexual conduct in outgoing letters" and "threatened disciplinary action for protected conduct."  (*Id.* at ¶¶ 37-38, 40.)

OPINION

Defendants posit five grounds for dismissal of some or all of Collins' claims, which the court addresses in turn.

I. **Claims against Meisner**

First, defendants contend that the claims asserted against Meisner should be dismissed because the allegations asserted do not meet the requirements of Federal Rule of Civil Procedure 8.  To satisfy Rule 8, plaintiff need not provide detailed factual allegations, but must provide "just enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")).  A plaintiff must provide enough facts to state a claim that is plausible on its face and allow the "court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  Complaints that merely provide vague and conclusory allegations are insufficient

to state a claim for supervisory liability; rather, the complaint must be sufficiently detailed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

Here, Collins' complaint simply alleges that Meisner "approved, authorized and permitted" Bergland's actions. (Compl. (dkt. #1-2) ¶¶ 31, 37.)  This allegation, however, qualifies as the very type of vague and conclusory allegation rejected by the Supreme Court in *Iqbal* and *Twombly*.  In his opposition to defendants' motion, Collins elaborates by alleging that Meisner approved, authorized and permitted Bergland's actions by deciding Meisner's "formal grievance of this matter." (Pl.'s Opp'n (dkt. #12) 4.)  The court finds that this additional factual allegation -- namely, additional detail as to how Meisner approved, authorized and permitted Bergland's actions -- is sufficient to form a basis for Collins' conclusory allegation in his complaint.  While defendants are correct that the court must consider plaintiff's complaint in assessing Rule 8, here, in light of Collins' *pro se* status, the court will treat that portion of Collins' opposition brief as an amendment to paragraphs 31 and 37 of his complaint.  Accordingly, the court will deny defendants' motion to dismiss claims against Meisner under Rule 8.

## II. State Law Negligence Claims

Next, defendants argue that Collins' state law negligence claims should be dismissed as to both defendants because Collins failed to plead and establish an exception to public officer immunity.  The court is puzzled by defendants' first argument.

4

While defendants direct the court to cases requiring an affirmative allegation that an exception to public officer immunity applies, in the very next paragraph, defendants acknowledge that Collins "invokes the ministerial duty exception" in his complaint. (Defs.' Br. (dkt. #10) at 6 (citing Compl. (dkt. #1-2) ¶ 54.)  Indeed, in his complaint plaintiff adequately alleges that both defendants "have ministerial duties to comply with the established provisions and guidelines of the Wisconsin Administrative Code, and defendants have failed to comply with those duties." (Compl. (dkt. #1-2) ¶ 54.)  This allegation is sufficient at the pleading stage.

Defendants' second argument -- that plaintiff has failed to "establish" the exception -- is not framed correctly.  At the pleading stage, plaintiff need not establish, demonstrate or show the merits of his pleading. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) ("When [e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in her favor." (internal citation and quotation marks omitted)).  Rather, defendants' argument appears to be that even if the court accepts plaintiff's pleading that defendants failed to comply with ministerial duties, plaintiff's state law negligence claims fail because as a matter of law:  (1) the decision as to whether written materials constitute pornography does not create a ministerial duty, citing Wis. Admin. Code § DOC 309.01(16)(c); and (2) Bergland satisfied the requirement to provide the sender with notice stating why the letter was not delivered as required Wis. Admin. Code § DOC 309.04(4)(e)2.  While the court agrees with defendants that the determination of whether written material constitutes pornography

does not constitute a ministerial act -- such a determination necessarily requires the use of judgment -- the issuance of notice under § DOC 309.04(4)(e)2 could constitute a ministerial act.  Whether the notice Bergland provided Collins is sufficient to meet the administrative code requirement -- and, thus whether Collins can demonstrate a failure to comply with a ministerial duty -- is an issue for another day.  Accordingly, at least with respect to a negligence claim premised on the notice, or lack thereof Collins received, the court finds that plaintiff's pleading of an exception to public officer immunity is sufficient at this stage of the case.

### III. Declaratory Judgment Claims

Next, defendants challenge Collins' declaratory judgment claims.  Collins seeks declarations that defendants "have acted without regard to policies and procedures set forth within the Wisconsin Administrative Code and DAI (Division of Adult Institutions) Rules, with respect to refusing to send out plaintiff's outgoing First Class mail" and "with respect to defendants['] ongoing practice of not properly issuing a NOTICE OF NON-DELIVERY OF MAIL when refusing to send out inmates' outgoing First-Class mail."  (Compl. (dkt. #1-2) ¶¶ 50-51.)  Defendants seek to dismiss these claims on the basis that no justiciable controversy exists.

Specifically, defendants contend that for a justiciable controversy to exist "[t]he party seeking declaratory relief must have a legal interest in the controversy -- that is to say, a legally protectable interest."  (Defs.' Br. (dkt. #10) 8 (quoting *Chenequa Land Conservancy, Inc. v. Vill. of Hartland*, 2004 WI App 144, ¶ 11, 275 Wis. 2d 533, 685

6

N.W.2d 573).) Defendants reason that because administrative code violations do not give rise to a private right of action, plaintiff lacks a "legally protectable interest." Defendants, however, fail to direct the court to any case law requiring a private right of action for damages in order for a plaintiff to have a "legally protectable interest" in a determination as to whether defendants' conduct violated an administrative code provision. Indeed, prisoners commonly bring state court certiorari petitions appealing the prison's application of an administrative code provision. *See, e.g., State ex rel. Vang v. Kinston*, 2006 WI App 20 ¶ 1, 289 Wis. 2d 219, 709 N.W.2d 112, 2005 WL 3488443, at *1 (considering prisoner's writ of certiorari concerning release account and library access administrative code provisions). Moreover, from this court's limited review, Wisconsin courts allow declaratory judgment actions concerning the applicability of an administrative code provision. *See, e.g., Osco Drug, Inc. v. Wis. Pharmacy Examining Bd.*, 61 Wis. 2d 689, 690, 214 N.W.2d 47, 48 (1974) (affirming trial court's issuance of declaratory judgment that administrative code provision was not authorized by statute). As such, the court will deny defendants' motion without prejudice to defendants renewing the motion if they can present case law in support of their position that plaintiff must have a private right of action in order to have a legally protectable interest for purposes of seeking a declaratory judgment.

## IV.  First Amendment Claim and First Amendment Retaliation Claim

As described above in the allegations of fact, plaintiff's First Amendment claim concerns two pieces of mail. For the first piece of mail, Collins alleges that Bergland

refused to mail the letter out and, in a document included with his complaint, Collins represents that he then destroyed the letter.  For the second piece of mail, Collins alleges Bergland initially refused to send the letter, but the letter was ultimately mailed out.  Defendants seek dismissal of plaintiff's First Amendment claim on the basis that (1) with respect to the first letter, plaintiff cannot demonstrate that he engaged in protected conduct because he destroyed the letter, and (2), with respect to the second letter, the letter was subsequently mailed and therefore there was not violation of his First Amendment rights.  Defendants also seek dismissal of plaintiff's First Amendment retaliation claim with respect to the first letter on the basis that he cannot demonstrate protected conduct.  The court addresses each argument in turn.

With respect to the first letter, as an initial issue, in arguing that plaintiff cannot demonstrate that the first letter constituted protected conduct, defendants rely on the wrong standard.  For outgoing mail -- as is at issue here -- the court applies the standard announced in *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), requiring that (1) "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression;" and (2) "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."  In *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989), the Supreme Court limited the holding in *Procunier* to outgoing mail, and applied the more relaxed standard set forth in *Turner v. Safely*, 482 U.S. 78 (1987) -- that First Amendment restrictions on prisoners must be "reasonably related to legitimate

penological interests" -- to incoming mail. *See Koutnik v. Brown*, 456 F.3d 777, 784 & n.4 (7th Cir. 2006) (reaffirming application of *Procunier* in outgoing mail claims).

While courts applying the *Turner* standard routinely uphold prison regulations prohibiting pornography within a prison, the same cannot be said with respect to outgoing mail under *Procunier*. *Compare Rogers v. Morris*, No. 01-3903, 2002 WL 453706, at *1, 34 F. App'x 481, 482 (7th Cir. Mar. 21, 2002) (upholding prison regulation banning pornographic magazines within a prison, finding it "reasonably related to legitimate penological interest" under *Turner*), *with Pepperling v. Crist*, 678 F.2d 787, 790 (9th Cir. 1982) (applying *Procunier* -- in pre-*Thornburgh case* -- to strike down prison censorship of *Hustler* magazine), *and Allen v. Helsel*, No. 94-15881, 1995 WL 216985, at *1 (9th Cir. Apr. 10, 1995) (unpublished) ("[D]efendants' delay of his outgoing mail in order to screen for pornography might not further a substantial government interest.") (citing *Procunier*).

Even putting aside the appropriate legal standard, the fact that the letter no longer exists -- or at least, plaintiff represented that it no longer existed in a grievance attached to his complaint -- does not foreclose him from demonstrating that the letter did not constitute written pornography, or, at least, that Bergland's refusal to mail out the letter did not further an important government interest or that her decision was greater than necessary to protect that government interest. Collins can describe the contents of the letter in an affidavit. *See George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) (explaining that prisoner could have "described" the book at issue in filings at summary judgment even if he could not produce it). To the extent Bergland recalls the contents, defendants

could, of course, challenge Collins' account -- but, a determination of the contents of the letter necessarily involves an issue of fact which is not properly considered at the motion to dismiss stage. The court, therefore, will deny defendants' motion to dismiss plaintiff's First Amendment and First Amendment retaliation claim with respect to the first letter.

As for the second letter, defendants contend that since the letter was ultimately mailed out after a short delay, plaintiff cannot state a violation of his First Amendment rights. While the court agrees that, viewed in isolation, a short delay in the mailing of a letter does not constitute a violation under the First Amendment, *see Zimmerman v. Tribble*, 226 F.3d 568, 572-73 (7th Cir. 2000), here, the delay was not because of prison process delays, or some other reason unrelated to the content of plaintiff's letter, rather the delay was because of his exercise of his First Amendment rights -- assuming that the content of the letter was protected. Accordingly, the court will deny defendants' motion as to the second letter as well.

## V. Bergland's Qualified Immunity Defense

Finally, defendants contend that Bergland is entitled to qualified immunity on Collins' First Amendment claims because "it would not be clear to someone in her position that she violated a clearly established constitutional right by denying delivery of mail that constituted pornographic material, and by issuing a warning slip when a second piece of pornographic mail came before her." (Defs.' Br. (dkt. #10) 16.)

To determine whether defendant is entitled to qualified immunity at the motion to dismiss stage, the court must consider: (1) whether the facts that a plaintiff has alleged

make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The court does not fault Bergland from seeking qualified immunity at this stage in the case -- "[Q]ualified immunity is the ability to be free from suit, not merely a defense from liability, and . . . , therefore, the question of immunity should be decided at the earliest possible stage." *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Still, in reviewing a qualified immunity defense raised in a motion to dismiss, "the only facts before [the court] are those alleged in the complaint, which [the court is] obliged to accept as true." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).

Defendant's request, as quoted above, focuses on the "fact" that the letters Collins attempted to mail were pornographic. To the contrary, in his complaint, Collins alleges that the letters did not constitute pornography. Moreover, in this portion of the motion, defendants again apply the incorrect legal standard, citing *Turner*. The protection afforded outgoing mail was clearly established at the time Bergland blocked Collins' mail. As such, the court finds no basis -- at this stage -- to award the protections of qualified immunity.

Finally, in defending the prison employees and officials against § 1983 claims, the Department of Justice rarely brings motions to dismiss, waiting instead to challenge the prisoner's lawsuit either on exhaustion grounds in an early summary judgment motion or on the merits. Admittedly with the benefit of hindsight, it is apparent that this practice should have been embraced in this case as well. As evidenced by the above

discussion, the arguments raised by defendants were, for the most part, not properly advanced at the pleading stage.

## ORDER

IT IS ORDERED that:

1) defendants Michael Meisner and Erin Bergland's motion to dismiss (dkt. #9) is DENIED;

2) defendants' motion to stay dispositive motion deadline (dkt. #16) is GRANTED; and

3) a scheduling conference will be held within 30 days to reset the dispositive motion deadline and the trial date in this case.

Entered this 31st day of March, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge