IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROY COLLINS,

                Plaintiff,                OPINION AND ORDER

v.

                                         13-cv-762-wmc

MICHAEL MEISNER and ERIN BERGLUND,

                Defendants.

---

In this action under 42 U.S.C. § 1983, the claims of plaintiff Roy Collins, an inmate at Columbia Correctional Institution, all center around allegations that two officials of the Wisconsin Department of Corrections violated the First Amendment by refusing to send his outgoing mail.  Before the court is defendants' motion for summary judgment.  Because the court finds that Collins has failed to put forth sufficient evidence to support a finding that his First Amendment rights were violated (or that he was retaliated against for exercising his First Amendment rights), the court will grant defendants' motion as to plaintiff's federal constitutional claims.  As for his remaining, supplemental state law claims, the court declines to exercise its supplemental jurisdiction and will dismiss those without prejudice.

UNDISPUTED FACTS[1]

### A. The Parties

Plaintiff Roy Collins was confined at all times material to this action at Columbia Correctional Institution ("CCI"), a maximum-security institution located in Portage, Wisconsin. Defendant Michael Meisner is presently employed as Warden of the Redgranite Correctional Institution, but was employed as Warden of CCI for all times relevant to Collins' claims. Defendant Erin Berglund is presently employed at Oregon Correctional Institution, but was employed as a Sergeant at CCI from January 2011 through September 2015. Though not a named defendant, Sandra Hautamaki is currently employed as the Deputy Warden of Redgranite Correctional Institution, but was employed at CCI during times relevant to plaintiff's claims, first as the Corrections Unit Supervisor beginning in June 2011 and then as Deputy Warden in June 2013.

### B. Mail Review

In 2012, defendant Berglund was assigned to the third shift in CCI's Housing Unit 9. As part of her duties, Berglund would process incoming and outgoing inmate mail. In addition to checking for contraband, this included reviewing mail to make sure it complied with the Wisconsin Department of Corrections ("DOC") administrative code, specifically Wis. Admin. Code § DOC 309.04, and other institution rules. When reviewing mail *between* inmates, Berglund would refer to a Mail Read Log DOC-240 Form. (Hart Decl., Ex. 1003 (dkt. # 27-4) 2.) That form provides that incoming and

---

[1] After resolving factual disputes and reasonable inferences in plaintiff's favor as the non-moving party, the court finds the following facts material and undisputed, unless otherwise noted.

outgoing mail between inmates shall not be delivered if it contains various types of content, including obscene materials. The form defines "obscene" as:

> if the average person, applying state contemporary community standards, would find that the work, taken as a whole: a. appeals to the prurient interest; b. depicts or describes, in a patently offensive way, acts involving necrophilia, masochism, sadism, bestiality, or an unnatural preoccupation with excrement; and c. lacks serious literary, artistic, political, or scientific value.

(*Id.*) This definition of obscenity is consistent with that adopted in Wis. Admin. Code § DOC 309.02(16)(c).

"When incoming or outgoing mail is not delivered, the inmate will be sent a completed DOC-243, a Notice of Non-Delivery of Mail." Department of Adult Institutions Policy #309.04.01(IV)(G). An inmate may appeal decisions regarding the non-delivery of mail to the warden by filing form DOC-400. Wis. Admin. Code § DOC 309.04(4)(c)(f).

### C. January 30, 2012, Letter

On January 30, 2012, Collins attempted to send a letter addressed to a female inmate, incarcerated in Louisiana. Based on her recollection, defendant Berglund represents that the letter described "sexual things [Collins] was going to do to the recipient," including "sexual violence." She specifically recalls that he was going to "fuck up her cervix." (Defs.' PFOFs (dkt. #26) ¶ 10 (citing Berglund Decl. (dkt. #28) ¶ 11).)

For his part, Collins contends that the tone of the letter was "reflective about what he's learned to make his future Relationships better." (Pl.'s PFOFs (dkt. #36) ¶ 39

(citing Collins Decl. (dkt. #37) ¶ 12).)[2] Collins further represents that the letter contained a "short fiction love-story/romantic fantasy," and that the "sexual descriptions were both blunt and poetic," but characterizes the content as "artistic in nature" and specifically represents that the letter "did <u>not</u> include any obscene material." (*Id.* at ¶ 40 (citing Collins Decl. (dkt. #37) ¶ 15).) Collins further represents that he "never wrote the phrase 'fuck up her cervix' in this Jan. 30, 2012 letter, nor did he write anything similar to that phrase." (Pl.'s Resp. to Defs.' PFOFs (dkt. #35) ¶ 10 (citing Collins Decl. (dkt. #37) ¶ 12).)

Berglund returned the letter to Collins with a post-it note on it, but did not provide a DOC-243 notice. Collins kept that note, which he includes with his summary judgment submission, but he apparently discarded the letter itself. The note cites: "ADMINISTRATIVE CODE 309.02(16) PG 60 SECTION (16)(C). NO WRITTEN MATERIALS MAY BE PORNOGRAPHIC." (Collins Decl., Ex. 014 (dkt. #37-5).) While Berglund contends that she returned the letter to provide him an opportunity to amend the letter, Collins points out that the post-it note contains no such instruction. Berglund explains this by representing that "[t]o the best of her recollection she instructed Collins to remove the portions of the letter involving descriptions of sexual

---

[2] Defendants object to Collins' testimony about the contents of the letter as inadmissible hearsay. (*See, e.g.*, Defs.' Resp. to Pl.'s PFOFs (dkt. #39) ¶ 39.) However, neither side is offering any statement in the letter for "truth of the matter" asserted. Rather, it is being offered for the fact of the statement itself. Just as defendants offer the admission of Berglund's recollections of statements "for the effect the contents of the letter had on her as the reviewer" (*id.*), so can plaintiff challenge those recollections with his own. *See* Fed. R. Civ. P. 807; *cf. George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) (explaining that prisoner could have "described" the book at issue in filings at summary judgment even if he could not produce it). In the end, the actual content of the letter is not material to the outcome of the case for reasons explained in the opinion below. Even if it were, Collins would appear to have a spoliation problem.

acts." (Defs.' PFOFs (dkt. #26) ¶ 11 (citing Berglund Decl. (dkt. #28) ¶ 12).) In response, Collins directly disputes this, representing that Berglund, at no time, instructed him to remove any portions of the letter. (Pl.'s Resp. to Defs.' PFOFs (dkt. #35) ¶ 11; *see also* Pl.'s PFOFs (dkt. #36) ¶¶ 11, 12.) To the contrary, Collins states that Berglund simply left the letter with the attached post-it note in the crack of his cell door. (*Id.*)

On February 13, Collins submitted an interview/information request slip about the January 30th letter to his then-Unit Supervisor, Sandra Hautamaki. Hautamaki responded that she would need to see the letter to determine whether it could be mailed out. Hautamaki has no knowledge of what happened to this letter, though she understands that Collins told the Inmate Complaint Examiner that he no longer had the letter. Collins does not dispute this, other than to note that the January 30th letter was never mailed.

### D. February 22, 2012, Letter

On February 22, 2012, Collins again attempted to send a letter to the same female inmate in Louisiana. To the best of her recollection, Berglund states that this letter "included descriptions of sexual acts similar to the January 30 letter." (Defs.' PFOFs (dkt. #26) ¶ 15 (citing Berglund Decl. (dkt. #28) ¶ 15).) In contrast, Collins contends that he wrote a "short fiction love-story/romantic fantasy," that "was artistic in nature and did not include any violence or obscene material." (Pl.'s Resp. to Defs.' PFOFs (dkt. #35) ¶ 15 (citing Collins Decl. (dkt. #37) ¶ 15).)

Regardless, Berglund returned the second letter to Collins as well, this time with a post-it note that explained the letter would not be mailed, while again failing to provide a

5

DOC-234 notice. Collins also kept this post-it note, which states: "FOR THE 2ND TIME YOU MAY <u>NOT</u> SEND WRITTEN PORNOGRAPHY OUT POLICY 309.04.01 PG. 2." (Collins Decl., Ex. 015 (dkt. #37-6).) In addition, Collins represents that Berglund attached a warning slip to the second letter. (*Id.* (citing Collins Decl. (dkt. #37) ¶ 17; *id.*, Ex. 015 (dkt. #37-6).) The warning slip states that Collins "was given a warning for the following offense(s): 303 Code .36, .24," noting the specific behavior at issue was "polices & procedures on written pornography, disobeying orders." (*Id.*) While Berglund avers that she does not even recall giving him this warning slip,[3] Collins further represents that Berglund told him a few days later that she would write him a "ticket," which Collins interpreted to mean that she would issue him a Disciplinary Adult Conduct Report, initiating disciplinary measures. (Pl.'s PFOFs (dkt. #36) ¶ 20.) As a result, Collins contends that he has been afraid and reluctant to write about anything sexual in a letter. (*Id.* at ¶ 21 (citing Collins Decl. (dkt. #37) ¶ 23).)

Defendants represent that Collins complained to Berglund about the second letter being returned to him, so she gave it to her supervisor, Lieutenant Wogernese, to determine whether the letter should be sent out. Collins disputes this, instead, stating that after the letter was sent to him, he sent it to Unit Supervisor Hautamaki for her review. The parties agree, however, that the letter was eventually returned to Collins,

---

[3] Defendants also maintain that "written warnings would not negatively affect an inmate's classification, program placement, or job assignment selection," and that they are "not formal discipline." (Defs.' PFOFs (dkt. #26) ¶ 42 (citing Meisner Decl. (dkt. #30) ¶ 26.) This, too, Collins disputes, representing that warnings are logged on an inmate's "warning card," and the institution's hiring staff would review an inmate's disciplinary record, including the warning card, in determining job placements. (Pl.'s Resp. to Defs.' PFOFs (dkt. #35) ¶ 42 (citing Collins Decl. (dkt. #37) ¶ 28).)

this time with a post-it note from Hautamaki, stating, "OK to mail out per Unit Manager." (Pl.'s Resp. to Defs.' PFOFs (dkt. #35) ¶ 16 (citing Collins Decl. (dkt. #37) ¶ 16).)

Hautamaki has a recollection of the second letter's content that is closer to Berglund's, but concedes that no copy was made of the letter. Based on Hautamaki's own recollection, the letter was sexually explicit, and she felt that it was an inappropriate communication between two inmates under DOC § 309.04(4)(c)(8)c, which provides in pertinent part that "[t]he department may not deliver incoming or outgoing mail if it. . . [i]s 'injurious', meaning material that . . [i]s inconsistent with or poses a threat to the safety, treatment or rehabilitative goals of an inmate." Still, Hautamaki reviewed the letter with former CCI Security Director Nickel, who determined that the letter *could* be mailed out. Hautamaki then gave the letter to a sergeant with the post-it note as described by Collins, saying that it was okay to mail it out.

At that point, it is unclear what became of the second letter. After Collins made further complaints about the status of the letter, Hautamaki reports contacting Wogernese, who acknowledged having the letter and said he would return it to Collins. Berglund represents that she saw Collins' letter again, this time with the post-it note signed by Hautamaki, and mailed it out. In contrast, Collins contends that even though Hautamaki approved the letter for mailing, Collins opted to not mail it because his inmate grievance was rejected, and it was, therefore, "unclear to Collins if he would still be penalized for attempting to mail out the letter." (Pl.'s Resp. to Defs.' PFOFS (dkt.

7

#35) ¶ 20 (citing Collins Decl. (dkt. #37) ¶ 26).) After making that decision, Collins does not explain what became of the letter.

Defendants submit DOC-240 Mail Read Log form from January 17, 2012, through May 9, 2012. (Hart Decl., Ex. 1003 (dkt. #27-4).) There are no entries for January 30 or February 22 listed on the log. There are, however, numerous letters logged from Collins to the female Louisiana inmate, identified by her inmate number 61504, during March and April 2012. Berglund assumes that one of those log entries is for the February 22 letter, although Collins again avers that he never mailed the letter out.

E. Inmate Complaints

Collins submitted Offender Complaint CCI-2012-3179 on February 17, 2012, in which he complained that a letter was returned to him as the officer felt it was sexually graphic. (Hart Decl., Ex. 1001 (dkt. #27-2) 1-5.) The Inmate Complaint Examiner ("ICE") Joanne Lane recommended that the complaint be dismissed because Collins failed to preserve the letter, and therefore "ICE can only assume that the correspondence . . . was sexually graphic and offensive in nature, which was read according to CCI policy, by 3rd Shift Sgt. Berglund." (*Id.* at 4-5.) In his role as the reviewing authority under Wis. Admin. Code § DOC 310.12, defendant Warden Meisner also reviewed Collins' complaint and accepted the ICE's recommendation. Accordingly, the complaint was dismissed on March 19, 2012.

Collins submitted Offender Complaint CCI-2012-6467 on March 27, 2012. In that complaint, Collins complained that Sergeant Berglund refused to send out his letter, dated February 22, 2012, as well as that this second letter had been misplaced by the

Unit Manager Hautamaki. (Hart Decl., Ex. 1002 (dkt. #27-3) 1-3.) On March 29, ICE Lane rejected the complaint on the basis that the complaint raises two issues: (1) that Berglund refused to send out mail; and (2) that Hautamaki misplaced the letter. The rejection also noted that the issue was raised in a prior complaint, although, as Collins points out, this complaint concerned the February 22 letter. On April 3, Meisner reviewed this complaint and found that Lane's decision to reject it was appropriate.

## OPINION

**I.    First Amendment Claims**

In this lawsuit, Collins was granted leave to proceed on related claims under the First Amendment, challenging two alleged actions by defendant Berglund: (1) her refusal to send out his January 30 and February 22, 2012, letters; and (2) her retaliation against him by threatening disciplinary action for filing administrative complaints regarding those letters. As the court described in its prior opinions and order granting plaintiff leave to proceed on these claims and later denying defendants' motion to dismiss, the standard announced in *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), applies for restrictions in outgoing mail, which requires that: (1) "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression"; and (2) "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."[4] As for plaintiff's claim of retaliation under the First Amendment,

---

[4] In *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989), the Supreme Court limited the holding in *Procunier* to outgoing mail, and applied the more relaxed standard set forth in *Turner v. Safely*, 482

9

Collins must demonstrate that: (1) he was engaged in a constitutionally protected activity; (2) he suffered a deprivation that would likely deter a person from engaging in the protected activity in the future; and (3) the protected activity was a motivating factor in defendants' decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). If Collins makes this initial showing, then the burden shifts to defendants to demonstrate that they would have taken the same actions "even in the absence of protected conduct." *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). For the reasons explained below, both First Amendment claims fail.

### A. Protected Speech

Defendants seek summary judgment on both of plaintiff's First Amendment claims on the basis that the letters were not protected speech. "The determination of whether speech is constitutionally protected is a question of law for the court." *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 150 n.10 (1983)). In so moving, defendants rely on Berglund's recollection of the content of the letters, particularly her recollection that the January 30th letter contained the phrase "fuck up your cervix." (Defs.' Opening Br. (dkt. #25) 9-10.) As described above, however, Collins disputes that this letter contained the line or any similar line, or that it could otherwise be construed as obscene. In light of the parties' dispute as to the

---

U.S. 78 (1987) -- that First Amendment restrictions on prisoners must be "reasonably related to legitimate penological interests" -- to incoming mail. *See Koutnik v. Brown*, 456 F.3d 777, 784 & n.4 (7th Cir. 2006) (reaffirming application of *Procunier* in outgoing mail claims).

content of the letters, the court would need to hear testimony to assess the parties' credibility.

Moreover, while Collins' denial as to content forms a sufficient basis for this issue to proceed to trial, the institution's decision to allow the second letter to be mailed -- the only one which other individuals beside Berglund has an opportunity to review -- further bolsters a finding that Collins' speech was protected. To the extent defendants seek to renew their argument that Collins cannot demonstrate that the speech was protected, the court rejects that argument for the same reason it denied defendants' motion to dismiss. (3/31/16 Op. & Order (dkt. #19) 9-10.) *See also George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) (explaining that prisoner could have "described" the book at issue in filings at summary judgment even if he could not produce it). Accordingly, the court denies defendants' motion for summary judgment based on an argument that the speech was not protected.

### B. Impingement on Protected Activity

Alternatively, defendants seek summary judgment on Collins' First Amendment claim on the basis that his rights were not violated. Specifically, defendants argue that (1) the first letter was not mailed because Collins discarded it; and (2) the delay in mailing out the second letter was not caused by Berglund.[5] In raising these arguments, defendants are relying on the legality of the institutional review process that determines

---

[5] Collins represents that he opted not to mail out the second letter because of concerns about retaliation. Here, too, if the letter ultimately was not mailed, it was Collins' decision. As such, Collins' claim concerns the delay in gaining permission to mail the letter.

whether mail will be sent out. That process necessarily involves an initial decision which may be adverse to the inmate followed by some review, and as evidenced by the circumstances surrounding the second letter, even multiple layers of review.

Absent some evidence of an immediate disciplinary action, or of a continued refusal to send out materials in the face of a decision finding the materials protected by the First Amendment, the defendants' review process appears to have operated consistent with current constitutional law. *See, e.g.*, *Lindell v. McCaughtry*, No. 01-C-209-C, 2003 WL 23218012, at *6 (W.D. Wis. Oct. 7, 2003) ("[C]ourts are required to give considerable deference to prison officials . . . in regulat[ing] relations between prisoners and the outside world."). In particular, the court agrees with defendants' assertion that "[d]etermining whether materials violate contemporary community standards for sexual content necessarily requires discretion and can be susceptible to opposing views." (Defs.' Opening Br. (dkt. #25) 11.)

While plaintiff harps on Berglund's failure to use and attach the appropriate DOC-243 Notice, there is neither a dispute that plaintiff received actual notice of her determination that the two letters at issue violated the prohibition on mailing obscene materials, nor that Collins challenged both of those decisions by raising his concern to the unit supervisor directly and through the inmate grievance process. Indeed, the undisputed facts demonstrate that the process worked as planned: unfortunately, Collins never challenged Berglund's treatment of the first letter beyond consulting his Unit Supervisor and Security Director Janel Nickel ultimately decided that the content of the second letter was not obscene and could be sent out.

If defendant Berglund or other prison staff continued to block Collins' letters containing similar content after the decision by Nickel, then Collins might have a claim. Moreover, with respect to the first letter, the institution's conclusion that it could not review Berglund's initial determination without the letter itself is entirely reasonable. Any injury caused by the first letter not being mailed out, therefore, was due to Collins' intervening decision not to include it in his request for review. Finally, Collins actually prevailed on his challenge to the second letter, but decided not to send it.

Based on the pleadings alone, the court inferred in an earlier opinion that any delay in mailing out the letter was because of the content of the letters and not a process delay. (3/31/16 Op. & Order (dkt. #19) 10.) The record on summary judgment, however, precludes that inference. The undisputed facts reflect that the delay of mailing was due to an administrative process delay. *See Zimmerman v. Tribble*, 226 F.3d 568, 572-73 (7th Cir. 2000) (upholding dismissal; finding one incident of untimely delivered mail did not give rise to constitutional claim); *Franklin v. McCaughtry*, 110 F. App'x 715, 722 (7th Cir. 2004) (unpublished) ("We have emphasized the significance of *repeated* infractions by prison mailroom workers, particularly when those actions indicate a policy or practice of mishandling inmates' mail."); *Covington v. Steinert*, No. 13-CV-379-WMC, 2016 WL 616589, at *5 (W.D. Wis. Feb. 16, 2016), *appeal dismissed* (May 9, 2016) ("The Seventh Circuit has pointed out in numerous cases that an isolated delay or interference with mail that is not the result of a prison policy or practice is not cognizable

under the First Amendment.").[6] Because the undisputed record shows that the review process operated as it should, the court finds that Collins failed to establish a violation of his First Amendment rights. To the extent Collins suffered any injury, the fault lies with his decision not to include the first letter in the administrative review process and (ultimately) not to mail the second letter out, even after receiving a favorable appeal decision.

### C.  Retaliation

Collins' retaliation claim fails for much the same reason. As described above, to prove retaliation, Collins must put forth sufficient evidence from which a reasonable fact finder could conclude that his protected activity was a motivating factor in defendant's decision to take retaliatory action. *See Bridges*, 557 F.3d at 546. Here, Collins failed to put forth *any* evidence that Berglund was motivated by Collins' filing of an inmate grievance in refusing to mail out the February 22 letter.

Indeed, the record does not support a finding that Berglund was even aware of his inmate grievance when she issued her written warning. Instead, the evidence suggests that in issuing the written warning, Berglund believed, albeit mistakenly, that Collins continued to engage in prohibited activity. Accordingly, the court finds summary judgment on Collins' retaliation claim is also warranted.

---

[6] Collins did not challenge Wis. Admin. Code § DOC 309.04 itself, nor more specifically, its application to outgoing mail. Rather, Collins challenged *Berglund's* application of the policy -- namely, her determination that the letters fell within the definition of "obscene materials." Whether the policy is too restrictive in light of the standard described in *Procunier* is an issue not raised in this case, and one the court need not reach. (*See* 3/31/16 Op. & Order (dkt. #19) 9.)

II. **State Law Claims**

In granting defendants' motion for summary judgment with respect to Collins' First Amendment claims, the court has disposed of all federal claims for which it has original jurisdiction. The remaining claims seeking a declaratory judgment that Meisner and Berglund blocked his mail without notice required by related DOC policies, as well as damages under the common law of negligence, sound in state law, not federal law.

Given that the parties here are *not* citizens of different states, the court lacks original jurisdiction over both claims. Instead, the court allowed those claims to proceed at the screening stage based on the exercise of supplemental jurisdiction under 28 U.S.C. § 1367. Since the court has now dismissed all federal claims over which it has original jurisdiction, however, the usual practice is to dismiss any remaining state law claims without prejudice. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("The usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The court sees no reason to depart from that usual practice here.

ORDER

IT IS ORDERED that:

1) Defendants Michael Meisner and Erin Berglund's motion for summary judgment (dkt. #24) is GRANTED as to plaintiff's First Amendment and First Amendment retaliation claims.

2) The court declines to exercise its supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice.

3) The clerk of court is directed to enter judgment in favor of defendants on the federal claims and close this case.

Entered this 4th day of January, 2017.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge